**EQUAL EMPLOYMENT OPPORTUNI- TY COMMISSION, Plaintiff,**

v.

**CHRYSLER CORPORATION, Defendant.**

**No. C85–3725–A.**

United States District Court, N.D. Ohio, E.D.

Feb. 13, 1987.

**1524**

Elliott V. Porter, Trial Atty., E.E.O.C., Cleveland, Ohio, for plaintiff.

Steven B. Hantler, Paul R. Eichbauer, Chrysler Corp. Office of the Gen. Counsel, Detroit, Mich., John N. Childs, John T. Billick, Buckingham, Doolittle & Burroughs, Akron, Ohio, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BELL, District Judge.

On December 11, 1985, the Equal Employment Opportunity Commission (EEOC) filed this action against the defendant Chrysler Corporation. The EEOC contends that the defendant has violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, by maintaining a corporate policy or practice which fails to provide religious accommodations at its Twinsburg, Ohio Stamping Plant for employees who are members of certain religious organizations. Specifically, the EEOC asserts that the defendant has unlawfully denied a religious accommodation to Fred A. Karanovich, a Jehovah Witness, and has imposed disciplinary layoffs upon this employee for his failure to work on Sundays.

Beginning on December 23, 1986, a trial of this cause was held by this court. After having considered the totality of the evidence adduced by the parties, and the applicable law, the court now enters its Findings of Fact and Conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

## FINDINGS OF FACT

The Twinsburg Stamping Plant is a major production facility of the Chrysler Corporation in its manufacturing operation. At this facility the company manufactures many of the parts utilized at the other production plants in the final assembly of Chrysler products. In particular, the Twinsburg Stamping Plant manufactures certain component parts of Chrysler automobiles including floor pans, underbodies and doors. Since the Twinsburg plant is the only production facility for Chrysler which manufactures certain parts, the assembly plants of the company are dependent upon the operation at Twinsburg for a steady supply of parts. Thus, any lengthy work stoppage at Twinsburg can have a ripple effect throughout the entire manufacturing operation of the defendant.

In 1981, Chrysler Corporation, in response to the company's total financial situation, began a program to increase both employee productivity and the overall production at certain plant sites. Part of this program involved an increase in the production of parts from the Twinsburg plant; this in turn, necessitated an extensive schedule of overtime on the weekends by the employees at this facility.

Mr. Fred A. Karanovich, the charging party in this action, began working for Chrysler, Twinsburg on January 7, 1963. In 1977, he began working towards becoming a journeyman electrician and by 1981, he had achieved the position of a "stand by electrician" in the press room of the plant. In this capacity, Mr. Karanovich is considered as being in a skilled employee classification. As a stand-by electrician, he is responsible for the maintenance on the equipment used by the production lines and is to be available to repair, as quickly as possible, any machinery which malfunctions in his area. Mr. Karanovich is regularly scheduled to work the first shift, Monday through Friday.

In 1969, Mr. Karanovich became a member of the Jehovah Witnesses. In practicing his religion, he attends the Stow Kingdom Hall on three separate days during the week. On Tuesday evening the congregation meets for a book study of various materials concerning Jehovah Witnesses. On Thursday nights the congregation again meets for a study session of some selected topic in the Bible.

On Sunday morning the members of the Stow Kingdom Hall meet for a public talk or lecture on the Bible given by one of the five elders in the congregation. This talk is followed by a group discussion of the topics contained in the weekly edition of the Watchtower, a publication produced by and for the various Jehovah Witness congregations throughout the world. After this Sunday morning meeting, Mr. Karanovich prefers to perform his field service. All members of the congregation are expected to go out into the community to discuss the Jehovah Witness beliefs with non-members of his congregation. It was Mr. Karanovich's custom to perform his field service either with his family or with some other member of the congregation.

The Jehovah Witness religion does not observe any day as a sabbath, nor do the tenets of this religion prohibit any member from working or having employment on Sundays. Each member is encouraged to attend all of the meetings at Kingdom Hall but no member is required to attend. In addition, the members are encouraged to perform their field service work on any day of the week. This aspect of their ministry is to be done whenever the members are able to go into the public and can be practiced in the evenings.

Beginning in the summer of 1983, Mr. Karanovich requested that Chrysler grant him a religious accommodation which would permit him to take all Sundays off from work. Prior to this time Mr. Karanovich had routinely worked when scheduled on Sundays and had never expressed any dissatisfaction to the Chrysler management about his particular overtime work schedule.

The scheduling of overtime at the Twinsburg plant has been the subject of negotiations between Chrysler and Local 122 of the United Automobile, Aerospace and Agricultural Implement Workers of America (UAW). Due to the large amounts of overtime which is regularly scheduled at Twinsburg, both the local union and the company have devoted a considerable amount of attention to this issue. Negotiations concerning this matter have resulted in a section of the formal collective bargaining agreement which governs the manner in which all production employees will be required to work overtime and weekends.

Under the agreement, the company must notify the employees during the week that production will be scheduled for the weekend. Once this notification is completed all of the employees in the department scheduled to work are canvassed to determine which employees may wish to volunteer for the weekend overtime. Should the company obtain sufficient volunteers, the overtime employees are scheduled from that group. However, if there is an insufficient number of volunteers, then those employees in that job classification who have worked the lowest number of overtime hours are scheduled to work. Thus, the agreement with the UAW provides that the non-voluntary overtime assignments will be equalized among the employees.

The collective bargaining agreement also provides that when the employees in a specific job classification have worked fourteen or more consecutive days, twenty percent of the employees in that classification shall be permitted to be excused on Sunday. Included among the twenty percent of employees to have Sunday off from work are any employees who are scheduled for vacation or who are medically excused from working overtime.

At all times throughout these proceedings, Mr. Karanovich has been scheduled to work non-voluntary weekend overtime, as provided in the collective bargaining agreement. In effect, he has been scheduled to work overtime as often as his fellow employees who are in the same job classification and have the physical capabilities to work.

At present, Chrysler Twinsburg employs twenty-eight people including Mr. Karanovich in the electrician classification. Four of these individuals are restricted from working overtime on the weekends for medical reasons as provided for under the collective bargaining agreement. This being so, when the company operates its production lines for an extended period of time, most of the non-excused employees in

this classification will be required to work overtime.

When Mr. Karanovich requested a religious accommodation to be excused from mandatory Sunday overtime, he was advised by Chrysler management to submit a letter from the head of his congregation in support of the request. Thereafter, a letter was submitted by one of the elders of Stow Kingdom Hall congregation in support of Mr. Karanovich's request. After reviewing Mr. Karanovich's request, the Chrysler management at the Twinsburg plant denied the request for religious accommodation.

Mr. Karanovich has failed to report to work on any Sunday when he was scheduled to work since August 4, 1984. As a result of his absence on each such occasion, Chrysler operated the plant with one less electrician than planned by the production control personnel at the facility. Thus the possibility existed that this shortage of an electrician might result in production delays and additional costs. In addition, the company could not perform certain maintenance functions as planned.

As a result of his failure to report to work as scheduled, Mr. Karanovich has been subjected to various disciplinary actions by the company. The discipline has been progressive and in accordance with the collective bargaining agreement. This progressive discipline has resulted in Mr. Karanovich being given 79 days in layoffs without pay. Recently, on November 30, 1986, Mr. Karanovich failed to report as scheduled on a Sunday and was notified by the company that he could be terminated for absenteeism. Throughout the disciplinary proceedings, Mr. Karanovich has maintained consistently that he has been unfairly denied a religious accommodation and has been discriminated against by Chrysler.

On May 31, 1984, Mr. Karanovich filed a charge of discrimination with the EEOC against his employer wherein he asserted that Chrysler had discriminated against him on the basis of his religious preference. Specifically, Mr. Karanovich charged that the company did accommodate members of other religious groups such as the Seventh-Day Adventists by permitting those individuals to not work on their sabbath. This matter was reviewed by the EEOC administratively; however, the EEOC was unable to conciliate the dispute with Chrysler and Mr. Karanovich.

The company has granted some of its employees at Twinsburg a religious accommodation which permit the individual to not work on certain days of the week. In each of these instances a tenet of the individual's religion strictly prohibits working on a specified sabbath. None of these people are employed in the same job classification as Mr. Karanovich.

A factor in the company's decision to deny Mr. Karanovich's request for religious accommodation was Chrysler's view that his desire to have all Sundays off was not based upon a sincere religious belief. The company reasoned that since Mr. Karanovich had previously worked on Sundays and that he readily admitted that his religion does not prohibit the working on Sundays, he should not be treated in a manner different than provided for in the collective bargaining agreement.

## CONCLUSIONS OF LAW

This action was filed by the EEOC after an attempt was made by the parties to reach some conciliation as to the charging party's allegations, and after the EEOC issued a reasonable cause determination relating to the issues in the complaint. Thus, the jurisdictional prerequisites to this action have been satisfied by the EEOC and this court can invoke its subject matter jurisdiction over the proceedings under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(f).

■ Title VII was enacted by Congress to prohibit, among other things, discrimination by an employer against any individual employee "with respect to his compensation, terms, conditions, or privilege of employment, because of such individual's ... religion." 42 U.S.C. § 2000e–2(a)(1). The terms of this provision forbid an employer from engaging in any action regarding its

employees which action is discriminatory on the basis of religion. Congress defined religion as used under Title VII as follows:

(j) The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

42 U.S.C. § 2000e(j). Thus, an employer is required under the law to make a reasonable accommodation to the religious beliefs and needs of its employees unless the accommodation would result in some "undue hardship" upon the operation of the employer's business.

The EEOC claims that in order to establish a *prima facie* case of religious discrimination in this action the Commission must prove that the charging party (1) has a *bona fide* belief that compliance with Chrysler's policy of working overtime on Sunday is contrary to his religion; (2) has advised the employer of the conflict and requested accommodation; and (3) has received some adverse employment action due to his refusal to work on Sunday. *See Johnson v. Angelica Uniform Group, Inc.,* 762 F.2d 671, 678 (8th Cir.1985). Further, the Commission asserts that once a *prima facie* case has been established the burden shifts to the defendant under a *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) analysis to demonstrate that it has made a good faith effort to accommodate Mr. Karanovich. However, the facts of this action and the procedural manner in which this case was presented do not mandate a strict application of the shifting production burdens criteria established in *McDonnell Douglas.* Instead, this court must at this time resolve the ultimate issues before it; that being whether Chrysler had to accommodate Mr. Karanovich and if so whether they made a reasonable attempt to accommodate. *See Ansonia Board of Education v. Philbrook,* 489 U.S. ——, ——, 107 S.Ct. 367, 371, 93 L.Ed.2d 305, 314 (1986).

The extent of the employers' obligation under Title VII to reasonably accommodate an employee who was prohibited by his religion to work on Saturday has been addressed by the Supreme Court. In *Trans World Airlines Inc. v. Hardison,* 432 U.S. 63, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977), the Court found that an employer is not required to bear more than a *de minimis* cost in providing the religious accommodation to a specific employee. In reaching this holding the Court stated:

To require TWA to bear more than a *de minimis* cost in order to give Hardison Saturdays off is an undue hardship. Like abandonment of the seniority system, to require TWA to bear additional costs when no such costs are incurred to give other employees the days off that they want would involve unequal treatment of employees on the basis of their religion. By suggesting that TWA should incur certain costs in order to give Hardison Saturdays off the Court of Appeals would in effect require TWA to finance an additional Saturday off and then to choose the employee who will enjoy it on the basis of his religious beliefs. While incurring extra costs to secure a replacement for Hardison might remove the necessity of compelling another employee to work involuntarily in Hardison's place, it would not change the fact that the privilege of having Saturdays off would be allocated according to religious beliefs.

As we have seen, the paramount concern of Congress in enacting Title VII was the elimination of discrimination in employment. In the absence of clear statutory language or legislative history to the contrary, we will not readily construe the statute to require an employer to discriminate against some employees in order to enable others to observe their Sabbath. (Footnote omitted.)

*Id.* at 84–85, 97 S.Ct. at 2276–2277.

In this action, the EEOC contends that Chrysler has failed to provide a reasonable accommodation to Mr. Karanovich even though such an accommodation could have been provided without an undue burden

being placed upon the employer. Having considered the record, this court for the reasons which follow, does not agree.

 The defendant could not have accommodated Mr. Karanovich without incurring additional economic hardship for itself and for the other employees at the Twinsburg facility. Under the collective bargaining agreement between Chrysler and the local union, the manner in which the assignment of overtime is to be given has been established in great detail by those parties. Based on the terms of the agreement, each employee who wants to work the overtime has that option. In addition, each employee in a job classification who does not desire to work the weekend overtime has a right to not volunteer for the assignment. All of the employees who select the option of not volunteering to work are thereafter treated in an equal manner, regardless of their religious preference, and assigned the overtime work based upon the number of hours which they have previously worked. "It would be anomalous to conclude that by reasonable accommodation Congress meant that an employer must deny the shift and job preference of some employees, *as well as deprive them of their contractual rights, in order to accommodate or prefer the religious needs of others." Id.* at 81, 97 S.Ct. at 2275.

Each time Mr. Karanovich is scheduled to work on a Sunday and then fails to report, the company has suffered some economic loss in productivity. In addition, the granting of a religious accommodation to one employee because of his desire to have all Sundays off, directly impacts upon the other electricians in the same job classification. Thus, the company is placed in the position of giving preference to the wishes of one employee due to his religious beliefs, over the rights of all of the other employees who desire to have the day off from work but do not share the same religious beliefs as are held by Mr. Karanovich. In making this decision, the company has followed the collective bargaining agreement which attempts to treat *all* employees equally, regardless of their religious beliefs. In sum, Chrysler's decision concerning Mr. Karanovich is not discriminatory. Hence, this court does not find that the Congressional purpose enunciated in Title VII of preventing religious discrimination in the workplace has been violated.

Recently, the Supreme Court in *Ansonia Board of Education v. Philbrook, supra,* also discussed as follows the congressional intent in amending Title VII to include the employer duty to make reasonable accommodation to the religious beliefs of employees:

> The legislative history of § 701(j) as we noted in *Hardison, supra,* 432 U.S. at 74–75, and n. 9, 97 S.Ct. at 2271–2272, and n. 9, is of little help in defining the employer's accommodation obligation. To the extent it provides any indication of congressional intent, however, we think that the history supports our conclusion. Senator Randolph, the sponsor of the amendment that became § 701(j), expressed his hope that accommodation would be made with "flexibility" and "a desire to achieve an *adjustment.*" 118 Cong.Rec. 706 (1972). Consistent with these goals, courts have noted that "bilateral cooperation is appropriate in the search for an acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business." *Brener v. Diagnostic Center Hospital,* 671 F.2d 141, 145–46 (CA5 1982). See also *American Postal Workers [Union v. Postmaster General ],* supra [781 F.2d 772], at 777 [CA 9 1986]. Under the approach articulated by the Court of Appeals, however, the employee is given every incentive to hold out for the most beneficial accommodation, despite the fact that an employer offers a reasonable resolution of the conflict. This approach, we think, conflicts with both the language of the statute and the views that led to its enactment. We accordingly hold that an employer has met its obligation under § 701(j) when it demonstrates that it has offered a reasonable accommodation to the employee. (Footnote omitted.)

*Id.,* 489 U.S. at ——, 107 S.Ct. at 372, 93 L.Ed.2d at 315. Applying this analysis, the

court further finds that even though Chrysler was not required under Title VII to circumvent the collective bargaining agreement to accommodate Mr. Karanovich, the defendant has demonstrated that it attempted to offer an accommodation to Mr. Karanovich within the limits of the UAW agreement.

The record reveals that Chrysler has made religious accommodation to other Twinsburg employees who are not in the same job classification as is the charging party. In each of these instances the persons accommodated are members of religious groups which prohibit the individual from working on a specified sabbath. In Mr. Karanovich's case, the company viewed his situation to be different from the other individuals since he readily admitted that no tenet of his religion prohibited his working on Sunday. In addition, the company questioned the charging party's sincerity because, even though his church affiliation was as it is now, he had historically worked on Sunday as requested by Chrysler.

In any event, the defendant did provide a manner in which Mr. Karanovich could obtain his desired result of having Sunday off from work. Under the collective bargaining agreement, Mr. Karanovich has various bidding and seniority rights which would enable him to seek other positions at the plant. Instead of utilizing the options available to him under the UAW agreement, Mr. Karanovich has staunchly maintained the position of having all Sundays off and remaining employed as an electrician. Under such circumstances the court does not find that the charging party has acted with the "bilateral cooperation" necessary for accommodation. *Brener v. Diagnostic Center Hospital,* 671 F.2d 141 (5th Cir.1982).

Accordingly, the court finds in favor of the defendant and this action is hereby dismissed.

IT IS SO ORDERED.